[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case came to this court for a limited contested dissolution of marriage. The plaintiff, George H. McManus, and the defendant, Elizabeth McManus, were married on April 25, 1970, in St. Louis, Missouri. Her maiden name was Schulte. The parties have resided in Connecticut for at least one year next preceding the date of the filing of the complaint. In fact they have lived here approximately eight years.
The plaintiff and defendant have one minor child born of their marriage, Christine deLaureal McManus, born June 27, 1974. She is a junior at Lauralton Hall and will be age 18 in June of 1992.
Neither party is receiving or has received aid from the State of Connecticut or any municipal subdivision thereof. The court finds that it has jurisdiction.
Both lawyers have substantially assisted the court by putting together their respective asset packages and have agreed in many instances as to what the assets consist of. The primary dispute is how the assets should be divided.
The husband, age 54, presently works for Amerada Hess Corporation where he is the manager of Corporate Real Estate. He is a West Point graduate and did additional studies at Purdue University to get an electrical engineering degree. He was in the Army and left as a Lieutenant Colonel in 1979. From his financial affidavit we can see that he has a military pension with an income of about $25,000.00 per year. In addition, his current income from employment is $165,000.00 a year, and he has a vested pension at Hess which will pay him $955.00 per month for life commencing at age 65.
The wife, age 43, obtained a three year nursing degree 21 years ago and worked for approximately seven months before and during the early part of the marriage. She is currently not licensed in Connecticut. The expert witness testified that she would have to take a ten week course at Fairfield University in order to work in Connecticut. It appears that the course would be available in March of 1992. For her to attend that course, she would have to register in January of 1992, and that the economic market for nurses right now was what she described as a "glut" and that she figured that by June of 1992 that the job market would open. The wife presently makes approximately $10,000.00 per year as a proofreader.
The asset package of the parties as set forth on their claims for relief and the other exhibits is that the plaintiff's CT Page 10198 claim for relief shows total assets of $690,375.06. The wife's claims for relief shows approximately $1,108,231.44. The most substantial difference is that the wife's claims show the husband's one quarter interest in his house inherited in Delaware, his inheritance from his grandmother of approximately $150,000.00 and his liquid assets after taxes and fees of approximately $47,000.00.
It is clear that throughout the marriage the wife was a homemaker and mother and wife. The husband had all of the earnings and created all of the financial assets. His earnings went to acquire all of the assets. He made the judgments on what should be acquired and what should not. The wife's testimony was that she did not know about many of the assets until the time the dissolution of marriage action began, and in fact, he had constantly referred to the fact that they were broke during the course of the marriage.
It is also clear that the husband has very substantial earnings and earning capacity. The wife has indicated she does not desire to be a nurse, that it was something that seemed okay 21 years ago but does not fit into her plans presently. One cannot compel someone to do something they do not want to do. The husband has indicated he wishes to retire at age 60 and wants that all built in to this situation.
This court must take the parties as it finds them which is a husband with substantial earnings and earning capacity and a wife who has only recently re-entered the job market and has a not very substantial earning capacity nor very substantial earnings.
The court would consider a modification based on a substantial and material change of circumstances when the husband retires so that the alimony package could be re-evaluated. A marriage of this length coupled with the wife's economic earning capacity and all the other statutory considerations does not call for durational alimony.
The court has considered all of the relevant statutory criteria, in particular, 46b-81, the assignment of property and transfer of title statute, 46b-62, the attorney's fees statute,46b-82, the alimony statute, and 46b-84, the child support statute. The court has listened to the witnesses and their testimony and has reviewed the financial affidavits of the parties and the plaintiff's claims or relief and all of the exhibits in the file and orders as follows:
1. The marriage of the parties is hereby dissolved on the grounds of irretrievable breakdown. CT Page 10199
2. The husband shall pay, during his lifetime, alimony in the annual sum of $50,000.00 per year, payable at the monthly rate of $4,166.00 payable on the first day of each month until the earlier of the following: the wife's death, remarriage, or cohabitation under the statute.
3. The husband shall continue to pay the private school expenses for the minor child at Lauralton Hall.
4. The husband shall continue to pay the medical insurance and all unreimbursed medical expenses incurred for the minor child.
5. The parties have requested an unallocated order be made in this case which was done in the first paragraph of this order. No reduction in that order is to be made by the mere fact that the daughter reaches age 18.
6. The premises owned by the parties at 590 Hollydale Road, Fairfield, Connecticut, shall be listed for sale as soon as practical. The listing broker shall identify the repairs and fix-up expenses necessary to market the home, and the husband shall advance the finds for that purpose. Those funds shall not exceed $15,000.00. The proceeds of the sale shall be divided as follows:
 a. The first mortgage shall be paid. b. Normal costs incident to the sale of the residence including taxes, brokerage commissions, attorney's fees and the like shall be paid. c. The husband shall be reimbursed for any fix-up costs advanced by him. In the event that the house sale does not take place within six (6) months from the date it is listed he shall receive interest on his money at the annual rate of ten (10%) per cent per annum beginning after the six month period has ended. d. The first $175,000.00 of the remaining proceeds shall be paid to the wife and the balance shall be paid to the husband, e. In the event the parties have any difficulties during the course of the sale, this court shall retain jurisdiction in order to assist them.
7. The husband shall retain his oil and gas interests, (being those interests he invested $100,000.00 invested in 1986 and 1987), his limited partnership interests in Neuse L. P., one half unit, 25,000, 1984 (leasing medical equipment), his South Square Limited Partnership (apartment North Carolina, 1985, one half unit, 25,000), the cash CT Page 10200 value of his life insurance, his interest in the Alexandria, Virginia condominium, and the New Haven condominium. Any liabilities on any of those properties are to be the responsibility of the husband. He shall own those properties free and clear of any claim by the wife.
8. The husband shall transfer to the wife the following securities and bond accounts:
 a. Merrill Lynch, number 0877-12717, 6/28/91; b. Vanguard portfolio, high yield, number 980048768-8, municipal bonds; c. Scudder Bond Fund 3112550-1 5/28/91; d. Vanguard Long Term (municipal bonds) 980048768-8; e. Fidelity Investment Account X57-004472; f. Fidelity X57-059234; g. one half of the Hess Savings and Stock Plan.
9. The husband shall transfer to the wife, by means of a tax free rollover, sixty (60%) per cent of the value of the following IRA's as of November 5, 1991:
 a. State Street Bank and Trust NBO40286; b. Vanguard IRA 984919109-0; c. Fidelity Investment Account X57-004472; d. First Trust Account A274474-001: e. Nicholas Family Fund 021-0232301061907; f. T-Rowe Price 400592872-7; g. Mutual Shares Fund 74-0313220600.
10. The wife shall retain her IRA at State Street Bank Trust Company NBP-000132931.
11. The husband shall retain his interest in the liquidated stock grants which are reflected in the custodian accounts for Christine (Fidelity Account-custodian for Christine and Gateway-custodian for Christine) and joint account with his son (Fidelity- joint with son, 1,000 shares from stock grant) and shall be responsible for all taxes owed with respect to the stock grants.
12. The husband shall retain his $175,000.00 interest in the Delaware real estate being a one quarter interest in a residence and the securities that he inherited and, the LSH Trust.
13. Personal property shall be divided by agreement of the parties. In the event the parties cannot agree, the matter shall be referred to mediation to the family relations division of the court. In the event that mediation is CT Page 10201 unsuccessful, the court orders that all of the disputed personal property be sold and that the net proceeds be divided sixty (60%) per cent to the wife and forty (40%) per cent to the husband.
14. The husband shall be responsible for the Compu Med — Franchise Report, account no. 74557, in the approximate sum of $10,000.00 and the Compu Med — Franchise Report, account no. 74556, in the approximate sum of $5,000.00.
15. The husband shall pay to the wife the sum of $65,000.00 within ninety (90) days of the date of this decree to complete the property distribution.
16. The court enters a Qualified Domestic Relations Order (QDRO) transferring to the wife one hundred (100%) per cent of the husband's Amerada Hess pension. This pension benefit is estimated to generate $955.00 a month, approximately, of income to the wife when the husband attains the age of 65. The court retains jurisdiction in order to review the necessary QDRO forms required by Amerada Hess to be signed.
17. The husband will retain his military pension which will continue to generate $25,000.00 (plus cost of living adjustments) annually for the remainder of his life and shall continue to pay the survivor beneficiary premium and name the wife the survivor beneficiary if allowed by law.
18. The husband shall vacate the marital residence at 590 Hollydale Road, Fairfield, Connecticut, within thirty (30) days of the date of this decree, and the wife shall have exclusive possession of the premises. The husband shall pay one half of the mortgage monthly principal and interest payment and one half real estate taxes and one half the home owners insurance while the house is for sale in addition to the periodic unallocated alimony and support order hereinbefore set forth.
19. The husband shall maintain life insurance for the benefit of the wife in the sum of $495,000.00 so long as he is paying her alimony and so long as it is available to him as a condition of his employment.
20. The husband shall make a contribution towards the wife's attorney's fees in the sum of $12,000.00, said amount to be paid out of the husband's net proceeds of the sale of the marital residence.
21. The husband shall transfer to the wife the 1986 Chevrolet CT Page 10202 that she is presently driving.
22. By agreement of the parties, the parties shall have joint, legal custody of the minor child who shall reside primarily with the wife. The husband shall have liberal and flexible visitation as agreed on by the parties.
23. Each of the parties shall pay the liabilities shown by them in the liability sections of their financial affidavits.
EDWARD R. KARAZIN, JR., JUDGE